UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

**JORDAN MICKLEVITZ,**

    Plaintiff,

  v.                                Case No. 18-CV-1983

**ADAM GALLENBERGER,** *et al.***,**

    Defendants.

## DECISION AND ORDER ON DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

Jordan Micklevitz, who is representing himself, brings this §1983 lawsuit alleging that defendants Adam Gallenberger, Richard Durica, Brian Chic, and Eric French violated his Fourth Amendment rights. (ECF No. 8 at 5.) Defendants move for summary judgment. (ECF No. 25.) For the reasons discussed below, I will grant defendants' motion for summary judgment and dismiss this case.

### FACTS

Micklevitz is a Wisconsin resident. (ECF No. 27, ¶ 1.) Gallenberger, Durica, Chic, and French are police officers in the Village of West Milwaukee. (*Id.*, ¶ 2.)

On February 7, 2016, Gallenberger and Chic went to 5433 W. National Avenue Apartment #346 to perform a "welfare check" in response to a report of a domestic disturbance. (*Id.*, ¶¶ 3-4.) They heard a woman (Summer Staley) crying and yelling inside the apartment. (Chic Dec., ECF No. 26-2, ¶ 4; Gallenberger Dec., ECF No. 26-

5, ¶ 4.) Staley opened the door to talk to the officers but denied their request to come inside. (Micklevitz Dec., ECF No. 31-1 at 1.) Nevertheless, the officers pushed their way inside the apartment with their tasers drawn. (*Id.*)

The officers did a "protective sweep" of the apartment and saw Micklevitz in the bathroom. (ECF No. 27, ¶ 5.) They saw an AR-style assault rifle, a Glock 40, several fully loaded magazines, and ammunition inside the apartment. (*Id.*, ¶ 6.) They smelled burnt marijuana and saw a box of sandwich baggies, a bag containing small plastic bags, a grinder, an electronic scale, and a clear bag containing what looked like marijuana. (*Id.*) The officers did some additional investigation and found out that Micklevitz was legally disqualified from possessing firearms, he had criminal charges pending against him in Milwaukee County Case 15-CF-2777, and he had prior arrests for possession with intent to deliver drugs, maintaining a drug trafficking place, and carrying a concealed weapon. (*Id.*, ¶¶ 8-10.)

Staley told the officers that Micklevitz did not live in the apartment. (Chic Aff., ECF No. 26-2, ¶ 6; Gallenberger Aff., ECF No. 26-5, ¶ 6.) She also told them that the weapons in the apartment belonged to her. (*Id.*) The officers concluded that there were no signs of an altercation and left. (Micklevitz Dec., ECF No. 31-1 at 1.)

About a week later, on February 14, 2016, Gallenberger, Chic, Durica, and French responded to another call of domestic disturbance at the same apartment. (ECF No. 27, ¶11.) The officers overheard a female voice yelling, "You abuse me you bastard, my face is all swollen, look what you did to my fucking face, it's all fucked up, you're going to jail now." (*Id.*, ¶ 13.) They also talked a witness who said that she

2

could hear yelling and screaming from the apartment that sounded like "they were going to kill each other." (*Id.*, ¶ 12.)

The officers knocked on the door and requested to perform a welfare check. (*Id.*, ¶¶ 14-15.) Staley declined. (Micklevitz Dec., ECF No. 31-1 at 2.) The officers explained that Staley would have to "actually open up the door to make sure that she was actually physically okay and not hurt," *see* Preliminarily Hearing Trans., ECF No. 26-1 at 34, but she continued to decline, *see* Micklevitz Dec., ECF No. 31-1 at 2. Micklevitz states that he told the officers he and Staley would come to the police station to prove "everything was ok." (Micklevitz Dec., ECF No. 31-1 at 2.) The officers gave them the address to the police station but continued to knock and kick on the door, asking them to open the door. (*Id.*)

Meanwhile, the police received another call from the original complainant. (ECF No. 27, ¶ 16.) This time, the complainant stated that items were being thrown from the window of Apartment #346. (*Id.*) At this point, Durica called the Milwaukee County Sherriff's Office SWAT team for assistance because he thought someone in the apartment was being held hostage, injured, or otherwise in imminent danger. (*Id.*, ¶¶ 18-20, 39.)

The SWAT team arrived and negotiated with Micklevitz and Staley. (Micklevitz Dec., ECF No. 31-1 at 2.) They continued to decline opening the door explaining that it was Valentine's day and they were having rough sex. (*Id.*) At one point during the negotiation, Micklevitz said that there was "blood in the apartment"

3

from the rough sex. (Durica Dec., ECF No. 26-3, ¶ 8.) The SWAT team then forced entry into apartment and took Micklevitz and Staley into custody. (ECF No. 27, ¶ 22.)

According to Micklevitz, after he and Staley left with the SWAT team, the defendants remained on the scene to search Staley's apartment. (Micklevitz Dec., ECF No. 31-1 at 2.) Micklevitz states, "the officers disrupted the arrangement of the furniture and rummaged through drawers, clothing, and closets." (*Id*. at 3.) He states that there were pictures taken of the inside of the apartment. (*Id*.) He states that the defendants planted a variety of evidence against him, including his driver's license, credit cards, money, marijuana, and prescription pills. (*Id*.)

According to defendants, they did not search Staley's apartment after the SWAT team left. (ECF No. 27, ¶¶ 40-41.) Chic states that he entered the apartment immediately following the SWAT team's forced entry to take pictures documenting possible damage to the apartment. (Chic Dec., ECF No.27-2, ¶ 15.) French states that he went to the window outside the apartment and picked up the items that had been thrown from the window earlier that day. (French Dec., ECF No. 26-4, ¶¶ 3-5.) The items included credit cards/rewards cards with Micklevitz's name on it, two prescription pill bottles containing Alprazolam 2mg with Micklevitz's name on it, and three baggies with about 15 grams marijuana total. (French Dec., ECF No. 26-4, ¶¶ 3-5.)

The following day, on Monday February 15, 2016, Micklevitz made a phone call while in Milwaukee County Sherriff custody. (ECF No. 27, ¶ 23.) During the phone call, Micklevitz indicated that the marijuana from the apartment was his. (*Id*., ¶ 24.)

4

Based on the incidents on February 14, the recorded phone call from February 15, and the pending charges in Milwaukee County case number 15-CF- 2777, Micklevitz was charged with felony bail jumping and possession of THC. (*Id.*, ¶ 25.) A state court judge found probable cause for the arrest. (Preliminarily Hearing Trans., ECF No. 26-1 at 42.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). When considering a motion for summary judgment, the court takes evidence in the light most favorable to the non-moving party and must grant the motion if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Id.* at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

5

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

Liberally construed, Micklevitz claims that: (1) defendants entered an apartment that he was occupying without a warrant; (2) defendants arrested him without a warrant; and (3) defendants framed him by planting evidence against him. Defendants move for summary judgment on all three claims.

I begin with Micklevitz's claim that defendants made a warrantless entry into an apartment he was occupying. The Fourth Amendment to the United States Constitution proscribes unreasonable searches and seizures. U.S. Const. amend. IV. Among those places that can be searched by the police, one's home is the most sacrosanct, and receives the greatest Fourth Amendment protection. *See Payton v. New York*, 445 U.S. 573, 585 (1980) (quoting *United States v. United States District Court*, 407 U.S. 297, 313 (1972)) ("[T]he 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'"). Law enforcement is prohibited from entering a home or dwelling without a warrant in all but the most exceptional cases. *Id.* at 586. And a warrantless search is presumed "unreasonable" unless the police can show that it falls within one of the carefully defined exceptions.

6

*See Sutterfield v. City of Milwaukee*, 751 F.3d 542, 553 (7th Cir. 2014). As relevant here, the "emergency aid" is one such exception. *Id.* at 558. The "emergency aid" exception provides that officers may enter a home without a warrant to render aid to an occupant whom they believe to be in distress and in immediate need of their assistance. *Id.* "The test for this exception is [] objective: the question is whether the police, given the facts confronting them, reasonably believed that it was necessary to enter a home in order to render assistance or prevent harm to persons or property within." *Id.*

Here, the evidence supports that defendants' conduct fell within the emergency aid exception. Defendants went to Staley's apartment in response to a report of domestic disturbance, just one week after going to the same apartment for another domestic violence disturbance call. A witness told them that it sounded like the individuals in the apartment "were going to kill each other" and they heard a woman scream "You abuse me you bastard, my face is all swollen, look what you did to my fucking face, it's all fucked up, you're going to jail now." From their previous domestic disturbance call to the apartment, defendants knew that there were several guns in the apartment. They also saw items being thrown from the window, which led them to believe that there may have been a hostage or an injured party in the apartment that needed their help. Based on this evidence, defendants had an objectively reasonable basis for believing that there was a person in the apartment in need of immediate aid, justifying the warrantless entry.

Micklevitz does not dispute any of the evidence outlined above. Instead, he argues that defendants should have immediately left when he told them that "everything was ok." (ECF No. 30 at 1-2.) Defendants, however, had heard Staley say that Micklevitz had recently hit her and Micklevitz refused to open the door to allow them to see that Staley was physically ok. Given the totality of these circumstances, no reasonable jury could find in Micklevitz's favor based solely on his own self-interested declaration that "everything was ok." Accordingly, Micklevitz's claim that defendants entered an apartment he was occupying without a warrant fails.

Micklevitz's claim that defendants arrested him without a warrant likewise fails. While it is true that defendants did not have a warrant, they did not need one. Probable cause is sufficient for an arrest. *See Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (a warrantless arrest satisfies the Fourth Amendment when supported by probable cause that the arrested individual committed a crime.) Based on the facts as defendants knew them at the time, they had probable cause to arrest Micklevitz. *See Devenpeck v. Alford*, 543 U.S. 146, 152 (2004) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.") A state court judge then found probable cause for Micklevitz's arrest. (Preliminarily Hearing Trans., ECF No. 26-1 at 42.) As such, there is no evidence on which a reasonable jury could find in Micklevitz's favor on this claim. *See Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006) ("Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution.")

Finally, Micklevitz contends that after he left with the SWAT team, the "officers" (it's unclear which of the four defendants he's referring to) allegedly entered the apartment again, searched the apartment, and planted evidence against him. (ECF No. 30 at 4-7.) Micklevitz admits that he was in SWAT team custody at that time, so he does not have any personal knowledge of what happened at the apartment after he left. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). At summary judgment, a court need not accept conclusory allegations that lack the requisite personal knowledge.[1]

Defendants, who were at the apartment after the SWAT team left, swear that they did not search or plant evidence at the apartment. Chic explains that he entered the apartment immediately following the SWAT team's forced entry to take pictures documenting possible damage to the apartment. Chic's documentation is permissible under the Fourth Amendment without a warrant. *See Colorado v. Bertine*, 479 U.S. 367, 371 (1987) (concluding that inventory searches are a well-defined exception to the Fourth Amendment warrant requirement because it serves to "protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger.").

---

[1] Micklevitz's lack of personal knowledge also poses a different problem for his §1983 claim- he fails to produce evidence establishing what each specific defendant allegedly did following the SWAT team's departure to violate his constitutional rights. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) ("Individual liability under 1983 … requires personal involvement in the alleged constitutional deprivation").

French explains that he went to the window outside the apartment and collected the items thrown out the window earlier that day. He swears that he did not "plant" the evidence there. Micklevitz disputes French's declaration and states that he did not throw his own items out of the window. Micklevitz's statement does not create an issue warranting a trial. Even if Micklevitz did not throw the items out of the window, he was not the only person in the apartment. Staley was also in the apartment. Regardless, who threw the items out of the window, a neighbor reported seeing items being thrown out of the window and French saw items below the window of the apartment. Thus, Micklevitz does not come close to offering evidence on which a reasonable jury could find that defendants planted evidence against him.

In light of the totality of the record, no reasonable jury could conclude that defendants violated Micklevitz's Fourth Amendment rights. Therefore, I will grant defendants' motion for summary judgment and dismiss this case.

**IT IS THEREFORE ORDERED** that defendants' motion for summary judgment (ECF No. 25) is **GRANTED** and this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 14th day of August, 2020.

BY THE COURT:

NANCY JOSEPH
United States Magistrate Judge